**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

PEOPLE FOR THE AMERICAN WAY
FOUNDATION,

Plaintiff,

v.                                          Civil Action No.  04-1421 (JDB)

UNITED STATES DEPARTMENT OF
JUSTICE,

Defendant.

**MEMORANDUM OPINION**

Plaintiff People for the American Way Foundation ("PFAWF") brings this action against

the Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), seeking

documents pertaining to sealed cases relating to post-9/11 immigrant detainees.  Defendant has

moved for summary judgment on the grounds that plaintiff's FOIA request necessitates a manual

search of at least 44,000 files for documents that are: (1) not easily identifiable from its case

management database, and (2) scattered across more than eighty different U.S. Attorney's Offices

nationwide.  According to defendant's estimates, this search would require an exorbitant amount

of money and time to perform and, accordingly, amounts to an unreasonably burdensome search.

Plaintiff has filed a cross-motion for summary judgment, asserting that such a search is not

unreasonably burdensome, but claiming that even if it were, it is not required by the FOIA

request.  Specifically, plaintiff submits that the FOIA request could be adequately addressed by

conducting an electronic search of the Public Access to Courts Electronic Records service

("PACER"), which would mitigate any burden.  For the following reasons, the Court will deny defendant's motion and grant plaintiff's cross-motion in part and deny it in part.

## BACKGROUND

PFAWF filed a FOIA request with the Executive Office for United States Attorneys ("EOUSA") and the Office of Information and Privacy ("OIP"), both components of the DOJ, on November 25, 2003.  Def.'s Mem. Supp. at 2.  The inquiry requested "all records that reflect, relate, or refer to any request by the government to seal the proceedings of a case in any federal court arising from or relating to the detention of a post 9/11 immigrant detainee, including, without limitation, redacted copies of any pleadings filed in support of a request to seal."  Compl. ¶ 14; Def.s Mem. Supp., Ex. 1A at 1 (letter dated Nov. 25, 2003).  In the alternative, PFAWF sought a full list of all cases described, "with the names of the parties redacted if required pursuant to a court order."  Compl. ¶ 16; Def.'s Mem. Supp., Ex. 1A at 1 (letter dated Nov. 25, 2003).  The EOUSA denied PFAWF's FOIA request before performing any search, stating that releasing the records "would result in an unwarranted invasion of personal privacy and would be in violation of the Privacy Act, 5 U.S.C. § 552a," and that the records were exempt from disclosure pursuant to sections (b)(6) and (b)(7)(c) of FOIA.  Compl. ¶ 9.

PFAWF filed an administrative appeal of the DOJ's denial on February 13, 2004.  Compl. ¶ 27.  DOJ denied the administrative appeal in June 2004, stating that the documents were exempt as an unwarranted invasion of personal privacy under § 552 (b)(7)(c).  Compl. ¶ 29.  On August 23, 2004, PFAWF then filed this action, claiming that the DOJ had wrongfully withheld requested documents.  Def.'s Mem. Supp. at 3; Compl. ¶ 31.  In its complaint, PFAWF stated that

the purpose of its request was to gather statistical data regarding the frequency with which the DOJ has sought to seal the proceedings of cases involving post-9/11 detainees. Compl. ¶ 17. The EOUSA then reopened PFAWF's FOIA request and sought statistical information of that nature in its records. Def.'s Mem. Supp. at 4. It found no responsive statistical data. Id. Because U.S. Attorneys' offices do not catalogue files based on immigrant status or whether the government has sought to seal the proceedings of the case, EOUSA concluded that a manual file search would be required to respond to PFAWF's request. Id.

On January 11, 2005, the DOJ presented PFAWF with a fee estimate of $372,799 to perform a 13,316.25 hour search of all responsive records in 88 U.S. Attorneys' Offices ("USAOs"). Def.'s Mem. Supp., Ex. 1E to Kornmeier Decl. at 1 (letter dated Jan. 11, 2005). PFAWF requested a fee waiver.[1] Id., Ex. 1F to Kornmeier Decl. at 1-5 (letter dated Feb. 7,2005). One month later, EOUSA informed PFAWF that the search was unreasonably burdensome and invited PFAWF to revise its request to make it more compatible with EOUSA's case management system. Id., Ex. 1G to Kornmeier Decl. at 1 (letter dated Mar. 8, 2005).

Over the next year, the parties engaged in settlement negotiations and reported their efforts to the court. Def.'s Mem. Supp. at 6. They discussed search methods that would presumably fit better with the way that the EOUSA and USAOs stored files and would allow for the identification and production of responsive records. Joint Stat. Rep. of 04/18/05. PFAWF proposed a two-pronged strategy for the search. Pl.'s Stat. Rep. in Adv. of 05/17/05 Conf. at 1-2. The first was a database search using the Legal Information Office Network System ("LIONS")

---

[1]Whether plaintiff is entitled to a fee waiver is not an issue that the parties have briefed for the Court.

to locate files dated after September 11, 2001 that were coded with specific terrorism-related identifiers and in which a material witness warrant had been issued.  Id.  The second was a subsequent, smaller-scale manual search of the case files culled through the LIONS search, to be performed by individual USAOs.  Id.

The government agreed to conduct the database search and to compile search-time estimates from individual offices, but indicated that it would not agree to carry out the manual search until the scope of the search was more clearly defined.  Id.  The database search of twelve terrorism-related codes produced 11,000 cases; the search of cases involving material witnesses identified just one case.  Pl.'s Stat. Rep. in Adv. of 07/05/05 Conf. at 2.  The government estimated that a manual search of 11,000 case files would take 6,327 hours to complete and would therefore be unreasonably burdensome.  Id.  In response, PFAWF suggested that the results of the LIONS search could be screened through PACER to eliminate publicly-docketed cases from the manual search.  Id.  For the purpose of settlement, EOUSA offered to conduct a PACER search of the 11,000 files, subject to a discussion of fees and an agreement by PFAWF formally to narrow its FOIA request accordingly.  Def.'s Stat. Rep. in Adv. of 8/10/05 Conf. at 2. Subsequently, however, the parties discovered that the 11,000 files excluded certain species of sealed civil cases related to terrorism -- specifically, petitions for habeas corpus.  Def.'s Stat. Rep. in Adv. of 9/14/05 Conf. at 2.  A LIONS search of habeas codes yielded an additional 58,000 cases, resulting in the identification of a total of 69,000 potentially responsive files.  Joint Stat. Rep. of 9/14/05 at 2.  To further facilitate cooperation, PFAWF agreed to eliminate 25,000 habeas cases from the manual search, leaving the parties with 44,000 potentially-responsive files. Joint Stat. Rep. in Adv. of 01/18/06 Conf. at 1.

Thereafter, PFAWF made a formal settlement offer, requesting that the government either: (1) conduct a manual search of the 44,000 identified files and waive the associated fee, or (2) use PACER to screen the 44,000 files in order to identify those cases that either are, or are suspected of having been, sealed, followed by a manual search of a subset of those files for which PACER contained no entry in order to determine if they had in fact been sealed.  Pl.'s Opp'n Ex. 10 at 2 (letter dated Nov. 16, 2005).  The government declined to accept this proposal, arguing that either type of search would be unduly burdensome.  Pl.'s Opp'n Ex. 11 (letter dated Jan. 17, 2006).  In response, PFAWF offered to limit the universe of relevant files to a random sample of the 44,000 potentially-responsive cases, provided that the random sample would yield a statistically significant result.  Id.  The EOUSA rejected this proposal, too, on the basis that "[c]reating a random sampling of the 44,000 cases is not within the EOUSA's normal function and is not something that it has the ability to do easily with any degree of accuracy and confidence."  Pl.'s Opp'n Ex. 13 at 1 (letter dated Feb. 16, 2006).  On January 20, 2006, PFAWF submitted a new FOIA request seeking records of sealed matters "identified in the database from March 2005 to date."  Def.'s Mem. Supp. at 8.  Subsequently, the government requested that PFAWF voluntarily dismiss this action in light of the new FOIA request.  PFAWF declined, and settlement discussions have proven unfruitful.  Joint Stat. Rep. in Adv. of 02/22/06 Conf.  Hence, the parties' cross-motions for summary judgment are now ripe for decision.

## STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c).  Material facts are those that "might affect the outcome of the suit under the

governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party seeking

summary judgment bears the initial burden of demonstrating an absence of a genuine issue of

material fact.  Tao v. Freeh, 27 F.3d 635, 638 (D.C. Cir. 1994).  In considering whether there is a

triable issue of fact, the Court must draw all reasonable inferences in favor of the non-moving

party.  Anderson, 477 U.S. at 255; see also Washington Post Co. v. United States Dep't of Health

and Human Servs, 865 F.2d 320, 325 (D.C. Cir. 1989).  The party opposing a motion for

summary judgment, however, "may not rest upon the mere allegations or denials of his pleading,

but . . . .  must set forth specific facts showing that there is a genuine issue for trial."  Anderson,

477 U.S. at 248.  The non-moving party must do more than simply "show that there is some

metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 586 (1986).

Moreover, "any factual assertions in the movant's affidavits will be accepted as [] true

unless [the opposing party] submits his own affidavits or other documentary evidence

contradicting the assertion."  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992) (quoting Lewis v.

Faulkner, 689 F.2d 100, 102 (7th Cir.1982)).  The mere existence of a factual dispute by itself,

however, is not enough to bar summary judgment. The party opposing the motion must show that

there is a genuine issue of material fact.  See Anderson, 477 U.S. at 247-48.  To be material, the

fact must be capable of affecting the outcome of the litigation; to be genuine, the issue must be

supported by admissible evidence sufficient for a reasonable trier of fact to find in favor of the

nonmoving party.  See id.; Laningham v. United States Navy, 813 F.2d 1236, 1242-43 (D.C. Cir.

1987).

In a FOIA case, the court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973).  Agency affidavits or declarations must be "relatively detailed and non-conclusory . . . ." SafeCard Services v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." Id. (internal citation and quotation omitted).  An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." Goland v. CIA, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted).

## ANALYSIS

### I.    SHOULD THE COURT CONSIDER THE INITIAL FOIA REQUEST SUBMITTED BY PFAWF, OR THE REQUEST AS NARROWED?

Defendant contends that the Court may only consider PFAWF's initial FOIA request, which, according to its calculations, would mandate a manual search of all post-9/11 files in all district offices, consuming 13,316 hours and $ 372,799 to perform.  Def.'s Mem. Supp. at 4- 5, 11-12, 14; Def.'s Mem. Supp., Ex. 1 at ¶¶ 16, 20 (Kornmeier Decl.).  Plaintiff, however, argues

that it narrowed its search during negotiations with defendant, and, as narrowed, the request would only implicate a finite, and less costly and burdensome, universe of 44,000 files.  Pl.'s Opp'n at 15-16.  In response, defendant submits that plaintiff explicitly did not agree to narrow its request, but rather expressly conditioned its willingness to narrow its request on the EOUSA's agreement to perform either a manual or a combined PACER/manual search of the 44,000 cases and waiver of any request for fees.  Def.'s Reply at 13.  Because defendant never accepted this offer, it argues that the modification never became effective.  Id.  The Court disagrees.

It would be senseless and inefficient for this Court to ignore the advances made during more than one year of tedious negotiations between the parties, only to have plaintiff file another FOIA request for the narrowed number of files and return to precisely the same position in which the parties now stand.  Furthermore, it is disingenuous for the government to argue that the request was never modified.  As plaintiff states, the FOIA requester is the "master" of the FOIA request.  Pl.'s Surreply at 4.  In this Court's experience, FOIA requests are frequently clarified or modified even after a lawsuit is filed.  To deny that possibility might be to deny any prospect of compromise or settlement in FOIA cases.  There is no authority, moreover, for the government's suggestion that its consent is required in order to effectuate a requester's reduction of its own FOIA request.  Significantly, the government was a signatory to several Joint Status Reports during the course of this litigation, in which the parties represented -- unequivocally -- that the FOIA request had been narrowed to encompass just 44,000 documents.  See Joint Stat. Rep. in Adv. of 01/18/06 Conf. at 1; Joint Stat. Rep. in Adv. of 02/22/06 Conf.  Accordingly, the Court will consider the reasonableness of the search necessitated by the FOIA request as narrowed by plaintiff during negotiations between the parties.  Because the government has, in fact, addressed

the narrowed FOIA request in its memoranda, there is a sufficient record for the Court to assess

in this regard.  See Def.'s Reply at 13-19.

II.     **DOES THE FOIA REQUEST, ENCOMPASSING 44,000 DOCUMENTS**
        **LOCATED IN 93 OFFICES, NECESSITATE AN UNREASONABLY**
        **BURDENSOME SEARCH ?**

        To be sure, FOIA does not require an agency to conduct what amounts to an unreasonably

burdensome search in response to a request.  See Goland, 607 F.2d at 353 (finding unreasonably

burdensome a request for additional responsive records where "if they exist, could be found only

through a page-by page search through the 84,000 cubic feet of documents in the [CIA] Records

Center") (internal quotation marks omitted); Am. Fed'n of Gov't Employees v. United States

Dep't of Commerce, 907 F.2d 203, 208-09 (D.C. Cir. 1990) (finding unreasonably burdensome a

request to locate "every chronological office file and correspondent file, internal and external, for

every branch office, staff office [etc.]").  But see Public Citizen, Inc. v. Dep't of Educ., 292 F.

Supp. 2d 1, 6-7 (D.D.C. 2003) (finding reasonable a search of 25,000 files for data irregularly

kept in the agency's database when the search was "certain to turn up responsive documents");

Nation Magazine v. United States Customs Serv., 937 F. Supp. 39, 42 (D.D.C. 1996) (finding

reasonable a search for a single memorandum among chronological files that were neither

indexed nor cross-indexed).  "When an agency has not previously segregated the requested class

of records, production may be required only 'where the agency [can] identify that material with

reasonable effort."  Founding Church of Scientology v. NSA, 610 F.2d 824, 836 (D.C. Cir. 1979)

(quoting Nat'l Cable Television Ass'n v. FCC, 479 F.2d 183, 192 (D.C. Cir. 1973)); see H.R.

Rep. No. 876, 93d Cong., 2d Sess. 5-6 (1974); S. Rep. No. 854, 93d Cong., 2d Sess. 9-10 (1974).

        If the reasonableness of a search is questioned, the burden is on the agency to "provide

sufficient explanation why a search . . . . would be unreasonably burdensome." Public Citizen, 292 F. Supp. 2d at 6 (citing Nation Magazine v. United States Customs Serv., 71 F.3d 885, 892 (D.C. Cir. 1995)). "Summary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . . and are not controverted by [other] evidence in the record." Miller v. Casey, 730 F.2d 773, 776 (D.C. Cir. 1984); see Public Citizen, 292 F. Supp.2d at 6 (finding insufficient an affidavit stating that a search would be "costly and take many hours to complete" and would require the interstate transfer of files or staff); cf. Goland , 607 F.2d at 352-53 (finding sufficiently detailed an affidavit stating the method of search and the number of files to be searched).

Defendant argues that a manual search of 44,000 files is unduly burdensome because the files are not easily identifiable from its case management system (which does not track sealed cases or post-9/11 immigrant detainee cases as sought by plaintiff) and would therefore require 25,000 hours of labor -- far beyond the effort required for an average FOIA response. See Def.'s Mem. Supp. at 11; see also Def.'s Reply at 13-19. Plaintiff, however, asserts that defendant has failed to meet its burden of establishing the unreasonableness of the request, highlighting the absence of declarations specifically addressing a search of 44,000 case files. Pl.'s Surreply at 5. Moreover, plaintiff characterizes defendant's time estimates for a search of 44,000 files as unrealistic, artificially inflated, and inconsistent with prior representations. Pl.'s Surreply at 7.

Plaintiff is certainly correct that defendant's affidavit states that a search of all files in the 88 USAOs would require 13,316 hours, Def.'s Mem. Supp., Ex. 1 at 4 ¶ 20 (Kornmeier Decl.), and has also claimed that the more limited search of 44,000 case files would require in excess of

25,000 hours to perform (nearly twice the amount of time estimated for the larger search).[2]  Def.'s

Reply at 14.  Despite these alleged inconsistencies, however, there is no genuine issue of material

fact regarding the search estimates, because they are based upon distinct search parameters and,

moreover, have been reconciled by defendant.  For example, defendant has explained that the

initial estimate was a minimum figure, exclusive of search estimates from five districts

(including the Southern District of Florida, which indicated that its search would take hundreds

of hours), and the initial estimate sought search time for unidentified case files.  Defendant urges

that the estimate for searching the 11,000 identified cases is therefore more accurate than the

initial estimate regarding the search of all cases.  Def.'s Reply at 14 n.7

     The Court is persuaded that defendant has met its burden of providing a sufficient

explanation for its contention that a manual search of the 44,000 files would be unduly

burdensome.  The 93 USAOs search (on average) only four to five thousand files annually in

connection with FOIA requests, yet the manual search at issue here would encompass

approximately ten times that number of files in connection with a single FOIA request.  Def.'s

Reply at 14; Def.'s Reply, Ex. G at 1 ¶ 3 (Suppl. Kornmeier Decl.).  Furthermore, the length of

each file may vary from as little as ten to as many as 200,000 pages, and the files may be

scattered among different buildings or located in storage.  Def.'s Reply, Ex. G at 1 ¶¶ 5, 6, 7

(Suppl. Kornmeier Decl.).  The search would require the retrieval of post-9/11 case files from

archived record depositories and a manual, at times page-by-page, review of the files to ascertain

---

[2]This estimate is based on EOUSA's determination that a search of 11,000 case files would require 6,372 hours.  Defendant multiplied this number by four (4) to arrive at the 25,000 hour estimate.  Def.'s Stat. Rep. in Adv. of 07/05/05 Conf. at 2; Def.'s Reply, Ex. G at 1, ¶ 2 (Suppl. Kornmeier Decl.).  Plaintiff contends the initial estimate is inflated because it does not account for the use of electronic searches available in some district offices.

their responsiveness.  <u>See</u> Def.'s Mem. Supp. at 14; Def.'s Mem. Supp., Ex. 1 at ¶¶ 16, 28, 33,

35, 37 (Kornmeier Decl.).  Because many of the FOIA liaisons are also involved in litigation and

litigation support, this search "would overwhelm the resources of the United States Attorney's

Offices and disrupt the law enforcement mission to which they are dedicated."  Def.'s Reply, Ex.

G. at ¶¶ 8, 9 (Suppl. Kornmeier Decl.).  Plaintiff has not provided the Court with anything (other

than its own skepticism and conclusory allegations) to cast doubt upon or otherwise undermine

these statements.

   FOIA requires an agency "to conduct a 'reasonable' search for responsive records 'using

methods which can be reasonably expected to produce the information requested.'"  <u>Public</u>

<u>Citizen</u>, 292 F. Supp.2d at 6 (quoting Oglesby v. U.S. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir.

1990)).  It is well-settled that an agency's mere "right of access" to a responsive document does

not render the document an "agency record," and FOIA applies only to records "which have in

fact [been] obtained . . . not to records which merely could have been obtained."  Forsham v.

Harris, 445 U.S. 169, 185-86 (1980) (emphasis original).  Moreover, "agencies are not required

to . . . . perform searches which are not compatible with their own document retrieval systems."

<u>Assassination Archives and Research Ctr., Inc. v. CIA</u>, 720 F. Supp. 217, 218 (D.D.C. 1989).  In

1996, Congress passed the Electronic Freedom of Information Act Amendments ("E-FOIA

Amendments"), Pub. L. No. 104-231, 110 Stat. 3048,  which provide that "[g]overnment

agencies should use new technology to enhance public access to agency records and

information."  Pub. L. No. 104-231 § 2(a)(6).  In this regard, the term "search" is defined as

requiring an agency to "review, manually or <u>by automated means</u>, agency records for the purpose

of locating those records which are responsive to a request."  5 U.S.C. § 552(a)(3)(D) (emphasis

added); Schladetsch v. HUD, 2000 WL 33372125, at * 3 (D.D.C.).  "Electronic database searches

are thus not regarded as involving the creation of new records."  Schladetsch, 2000 WL

33372125, at * 3.

     Unless there is "some reason to believe that the [] documents could be located without an

unreasonably burdensome search," the Court should generally accept the reasons provided in the

defendant's affidavits.  Goland, 607 F.2d at 353.  Plaintiff submits that a PACER search would

vitiate any otherwise-unreasonable burden presented by a manual search of the 44,000 files.[3]

Pl.'s Surreply at 9.  Furthermore, plaintiff notes that the use of PACER is in line with the broad

goal of the E-FOIA Amendments to encourage the use of technology in providing records to the

public.  Pl.'s Surreply at 10.  Defendant, relying on Forsham, contends that its obligations under

FOIA do not encompass a PACER search because it merely enjoys "right of access" to PACER,

which it need not employ to plaintiff's advantage because PACER is not its own database.  Def.'s

Reply at 16.  Hence, the performance of a PACER search would, in defendant's view, constitute a

requirement that it produce "non-agency records."  Id.  For defendant, the purpose of the E-FOIA

Amendments is only to clarify the principle that agency "records" include records that are

maintained in electronic format; the Amendments do not broaden the definition of agency

records to encompass an outside database like PACER.  Def.'s Reply at 19.

     If plaintiff sought only a list of records returned from the PACER search, then defendant

would be justified in arguing that Forsham would not require its compliance.  In such

---

[3]A search of case files employing PACER will reveal whether a case has been sealed or
may possibly have been sealed.  A "no record found" response indicates the latter occurrence.
Defendant would then need to manually search the corresponding file to confirm whether the
case has actually been sealed.

circumstances, the list was not previously created or obtained by the agency; hence, an order that defendant produce such a list would be tantamount to requiring defendant to <u>create</u> an agency record -- something that FOIA does not mandate.  But the Court does not understand plaintiff to seek such a list  -- rather, the acceptance of a list was a concession that plaintiff was willing to make during settlement negotiations in the interest of mitigating the burden associated with a manual search.  It did not effect a modification of the initial FOIA request, and the government ultimately rejected this alternative.  Hence, the FOIA request still seeks "all <u>records</u> . . . . including, without limitation, redacted <u>copies of any pleadings</u> filed in support of a request to seal."  Compl. ¶ 14; Def.'s Mem. Supp., Ex. 1A at 1 (letter dated Nov. 25, 2003) (emphasis added).

The FOIA request, as framed by plaintiff, will not employ PACER to generate any new records or documents, or to obtain non-agency records or documents.  Instead, PACER's role is contemplated as a means of identifying those pre-existing agency records that are indisputably within defendant's control and are responsive to the narrowed FOIA request -- PACER is simply a tool to aid in identifying responsive records from defendant's database of case files.  <u>See</u> Pl.'s Surreply at 9.  The use of PACER is in this way compatible with defendant's own case-management system, because it targets a subset of the 44,000 files selected based on the LIONS codes.  FOIA mandates that defendant conduct a reasonable search in response to plaintiff's FOIA request.  <u>E.g.</u>, <u>Public Citizen</u>, 292 F. Supp. 2d at 6 (quoting Oglesby, 920 F.2d at 68).   In this regard, plaintiff has submitted an affidavit stating that a PACER search of 44,000 files would require approximately 120 hours of work -- something that could be achieved by three full-time employees during a single week.  Pl.'s Opp'n, Ex. 14 at ¶ 6 (Gentile Decl.).  It thus appears that

the portion of the search that incorporates the use of PACER is not unduly burdensome.

Defendant has failed to offer any evidence to refute this showing.

_____Whether the entire search method is unreasonably burdensome, however, is another issue.

Because the search that plaintiff has proposed does not end at the PACER stage, but rather

contains a second component requiring defendant to conduct a manual search of some of the

cases identified through PACER, the Court cannot grant summary judgment in plaintiff's favor

based solely upon the PACER component.  At this juncture, the parties do not know how many

cases will be identified by PACER as possibly sealed, thus requiring manual review.

Accordingly, the overall reasonableness of the search that plaintiff urges cannot be assessed until

the initial PACER component is completed.  For this reason, the Court can only draw a

conclusion as to the reasonableness of the PACER component of the search.  If, in light of the

PACER results, the parties disagree regarding the reasonableness of a subsequent manual search,

then they may brief that issue for the Court.

## **CONCLUSION**

Although defendant's affidavit provides a detailed explanation of the undue burden

associated with a manual search of 44,000 files scattered over a large number of U.S. Attorney's

Offices nationwide, or only obtainable from storage facilities, plaintiff has convinced the Court

that such a search is not required in order to ensure a proper response to its FOIA request.

Defendant has failed to show that plaintiff's proffered alternative of using PACER initially to

identify responsive agency records is unavailable under the law or unreasonably burdensome to

perform.  Accordingly, defendant will be required to perform the  PACER portion of the search.

Because the parties have not presented the issue, the Court reserves the question of who must pay

the cost of the contemplated PACER efforts.[4]  The parties are expected to discuss and propose a

reasonable time-frame within which to complete the PACER portion of the search.  A separate

order has been posted on this date.

/s/      John D. Bates

John D. Bates

United States District Judge

Dated:      July 18, 2006

*Copies to*:

Robert Neil Weiner

ARNOLD & PORTER

555 12th Street, NW

Room 1251

Washington, DC 20004-1200

(202) 942-5855

Fax: (202) 942-5999

Email: robert_weiner@aporter.com

Darren Patrick Nicholson

ARNOLD & PORTER LLP

555 12th Street, NW

Washington, DC 20004-1206

(202) 942-6511

Fax: 202-942-5999

Email: darren_nicholson@aporter.com

*Counsel for plaintiff*

Steven Y. Bressler

U.S. DEPARTMENT OF JUSTICE

20 Massachusetts Avenue, NW

Washington, DC 20530

(202) 514-4781

---

[4]The Court does not mean to imply any views regarding search fees or a fee waiver.

-16-

Fax: (202) 616-8470
Email: steven.bressler@usdoj.gov

Marcia Berman
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Room 7204
Washington, DC 20530
(202) 514-3330
Fax: (202) 616-8470
Email: marcia.berman@usdoj.gov

*Counsel for defendant*